PAULA JOHNSON,                                        CIVIL NO. 09-600 (JRT/JSM)

     Plaintiff,

v.                                                   <u>REPORT AND RECOMMENDATION</u>

HOMEOWNERSHIP PRESERVATION
FOUNDATION,

     Defendant.


The above matter came on before the undersigned upon Homeownership Preservation Foundation's Motion to Dismiss [Docket No. 10]; plaintiff's Motion for Reasonable Modifications [Docket No. 22]; Homeownership Preservation Foundation's Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 33]; and Plaintiff's Motion for a Hearing [Docket Nos. 39, 42]. Plaintiff appeared <u>pro se</u> by telephone; and Shari L. Jerde, Esq. and Meghan E. Lind, Esq. appeared on behalf of Homeownership Preservation Foundation. This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and Local Rule 72.1(c).

## I.     FACTUAL BACKGROUND

The initial Complaint by plaintiff Paula Johnson ("Johnson") against defendant Homeownership Preservation Foundation ("HPF") asserted a claim for breach of contract; a claim under the Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. §§ 1206, <u>et</u> <u>seq</u>.; and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, <u>et</u> <u>seq</u>. <u>See</u> Complaint, ¶¶ 4-15 [Docket No.

1]. HPF responded to the Complaint by bringing a Motion to Dismiss [Docket No. 10]. While HPF's motion was pending but before it was heard, Johnson brought a Motion to Amend & Supplement Pleading [Docket No. 26]. The motion to amend was granted and Johnson was ordered to file her Amended Complaint by June 26, 2009. HPF went forward with its motion to dismiss the original Complaint. Subsequently, Johnson filed the Amended Complaint on July 7, 2009.[1] See Docket No. 32. HPF responded on July 16, 2009 to the Amended Complaint by filing its Motion to Dismiss Plaintiff's Amended Complaint [Docket No. 33].

In her Amended Complaint, Johnson brought a claim for a breach of contract (which contained similar factual allegations to the breach of contract claim asserted in her original Complaint), a claim under the under the Federal Records Act ("FRA"), 44 U.S.C. § 3105, and a claim under the Federal Privacy Act ("FPA"), 5 U.S.C. § 522a. Johnson acknowledged in her Amended Complaint that she was only reasserting the breach of contract claim from her original Complaint and confirmed at the hearing on HPF's second motion to dismiss that she was no longer pursuing her claims under RESPA or the Illinois Consumer Fraud and Deceptive Business Practices Act.

Johnson alleged the following facts in her Amended Complaint:

In 1958, Johnson's parents purchased a single family residential property in Illinois. See Amended Complaint [Docket No. 32], ¶ 4. As of January 2, 2009, the mortgage had a principal balance of $53,400.43 and the property value of the property

---

[1]     On June 16, 2009, the Court issued an Order [Docket No. 29] granting Johnson's motion to amend and gave her until June 26, 2009 to file her Amended Complaint, however, she failed to do so. At the June 30, 2009 hearing, Johnson stated she had not received a copy of this Court's June 16, 2009 Order. Therefore, the Court gave Johnson a one week extension, to July 7, 2009, to serve and file her Amended Complaint. See Amended Order [Docket No. 31].

was less than this balance. Id. The property was transferred to Johnson through a quit claim deed in November 2002. Id. Johnson she fell into "hardship" in June 2008, due to medical emergencies and the increase in mortgage payments. Id. On July 8, 2008, a contract was established between HPF and Johnson, at which time she was issued a case number. Id., ¶ 3. In July 2008, HPF informed Johnson that they were a HUD-approved federal agency that could assist her in avoiding foreclosure and securing the resources for refinancing her home or modifying her loan. Id., ¶ 5. HPF issued Johnson documents titled, "CLIENT ACTION PLAN of Paula Johnson," "BUDGET ASSESMENT SUMMARY of Paula Johnson," "CLIENT BUDGET of Paula Johnson," and "PRIVACY PRACTICES." Id., ¶ 6.

Johnson then alleged that HPF made numerous misrepresentations to her from July 2008 to March 2009, including the following:

- HPF had made contact with Johnson's mortgage company to assist her with negotiations pertaining to avoiding foreclosure. Id., ¶ 8.

- HPF had made contact with Johnson's mortgage company to assist in the negotiations of processing a modification of her loan, so as to avoid foreclosure. Id., ¶ 9.

- HPF had forwarded the "CLIENT ACTION PLAN of Paula Johnson," the "BUDGET ASSESMENT SUMMARY of Paula Johnson," and the "CLIENT BUDGET of Paula Johnson" to the holder of her mortgage, Ocwen Loan Servicing, LLC. Id., ¶ 10.

Johnson maintained that HPF's failure to assist her with her loan, constituted a fundamental breach of contract, and that had HPF assisted or extended to her the resources described to her by HPF from July 2008 to March 2009, she would not be facing foreclosure. Id., ¶¶ 11-12, 15. Johnson also classified the breach of contract as an "anticipatory breach" and "anticipatory repudiation" because HPF would not be able

to live up to and perform its agreement to provide her with assistance or resources. Id., ¶¶ 13-14.

As to her claims under the FRA and FPA, Johnson alleged that HPF retained and still retains her client file, which contains her financial information, power of attorney, loan number, the contact information for her mortgage company's retention consultant, homeowner insurance policy information, property tax information, and confidential information regarding her daily and monthly expenses. Id., ¶ 7. Johnson claimed that despite notifying HPF that she wanted her confidential information returned to her, HPF has refused to and has failed to return the documents. Id., ¶¶ 16-17, 19, 22. Johnson asserted that HPF is directly liable for three instances of the theft of her identity, during the time period that it has retained possession of her privileged financial documents. Id., ¶ 18.

In the "Damages" section of the Amended Complaint, Johnson alleged that as a proximate cause of HPF's "breach," refusal to safeguard her confidential documents, and failure to return the documents to her upon request, she has suffered emotional distress and has been the victim of identify theft on three occasions. Id., ¶ 26. Johnson further claimed that HPF's misrepresentations regarding assistance and communications with her mortgage company has resulted in: (1) the loss of valuable time to negotiate with her lender, leading her to face foreclosure; (2) a demand by her mortgage company that she pay the entire amount of her loan ($53,400.43); and (3) the fact that she "will soon lose her home." Id., ¶¶ 27-29. Johnson also claimed physical pain and mental anguish in the past and future. Id., ¶ 30.

In her Prayer for Relief, Johnson requested: (1) for the breach of contract, $200,000 in monetary damages and liquidated damages in the amount of $53,400.43 to remove herself from foreclosure, and to return her to the status she was in before contacting HPF; and (2) $500,000 as a sanction based on HPF's admission that it was aware of her requests for the return her confidential documents and its continual refusal to do so.  Id., ¶ 31(a-c).

HPF's submits that the Amended Complaint should be dismissed because the facts alleged by Johnson's fail to assert a breach of contract claim, there is no private cause of action under the FRA, and it is not liable as a federal agency for Johnson's FPA claim.

## II.    ANALYSIS

### A.    <u>Motion to Dismiss</u>

#### 1.    **Standard of Review**

Earlier this year, the United States Supreme Court reiterated the principles that govern proper pleading under Rule 8(a) of the Federal Rules of Civil Procedure and a motion to dismiss under Rule 12(b)(6).  <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). Rather than summarize these principles, this Court quotes them verbatim.

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [Bell Atlantic Corp. v.] Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S.Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct.

1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557, 127 S.Ct. 1955 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556, 127 S.Ct. 1955. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-50. Following Twombly and consistent with Iqbal, the Eighth Circuit stated:

After Twombly, we have said that a plaintiff "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims ..., rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007); see Wilkerson v. New Media Tech. Charter Sch., 522 F.3d 315, 321-22 (3d Cir. 2008). While a plaintiff need not set forth "detailed factual allegations," Twombly, 127 S.Ct. at 1964, or "specific facts" that describe the evidence to be presented, Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. Twombly, 127 S.Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," Bediako, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

Gregory v. Dillard's, Inc. 565 F.3d 464, 473 (8th Cir. 2009).

Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Further, "'[t]hough pro se complaints are to be construed liberally, see Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), they still must allege sufficient facts to support the claims advanced.'" Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); see also Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "pro se complaint must contain specific facts supporting its conclusions.").

When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.

Consequently, a court "will not supply additional facts, nor will [it] construct a legal theory for plaintiff that assumes facts that have not been pleaded." Id. (quoting Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## 2. Breach of Contract

In its original motion to dismiss, HPF first argued that Johnson as a matter of law was not entitled to seek triple recovery based on inconsistent allegations in three different suits.[2] In support, HPF referenced two other suits commenced by Johnson prior to the instant action. The first suit was filed by Johnson on January 9, 2009, against American Security Insurance Company ("American Security") in the United States District Court for the Northern District of Georgia, in which she claimed that it "directly caused the Mortgage holder, Ocwen Financial Bank, to place her account in delinquency and initiate the process of foreclosure…." See Memorandum of Law in Support of Homeownership Preservation' Foundation's Motion to Dismiss ("Def.'s Mem.") [Docket No. 12] at pp. 3-4 (quoting Affidavit of Meghan E. Lind. ("Lind Aff."), Ex. A at ¶ 13).[3] A couple of weeks later, on January 22, 2009, Johnson filed suit against Ocwen Loan Servicing ("Ocwen") in the United States District Court for the Southern District of Florida claiming, alleging among other claims, that after Ocwen acquired the

---

[2]    HFP also suggested that Johnson has brought several other lawsuits and is an experienced pro se litigant. See Def.'s Mem. at pp. 5-6.

[3]    As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss. However, the court "'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings.'" Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)).

mortgage, it failed to post payments made on the mortgage. Def.'s Mem., at p. 4 (quoting Lind Aff., Ex. B, ¶ 15). According to HPF, Johnson's allegations that her impending foreclosure was due HPF's failure to contact her mortgage company and to provide certain documents to her mortgage company (Compl. ¶¶ 9-11), are inconsistent with her other two suits where she alleged that the impending foreclosure was due to the wrongful conduct of American Security and Ocwen. It is HPF's position dismissal is appropriate where Johnson has "conceded in her suits against Ocwen and American Security Insurance Company that their conduct was the cause of the pending foreclosure." Id. at p. 6.

HPF also contended that Johnson's breach of contract claim should be dismissed because based on the standards articulated in Twombly, it was not plausible on its face. Def.'s Mem., at pp. 5-6.

As to Johnson's breach of contract claim, even accepting that its role was to assist her, HPF argued that Johnson never alleged that it had agreed to relieve her of her responsibility to pay her mortgage. Def.'s Mem. at pp. 7-8. Accordingly, HPF submitted that it was Johnson's alleged failure to pay her mortgage, and not any alleged action or inaction by HPF that was the cause of the possible foreclosure of her residence. Id. at p. 8. HPF further asserted that the breach of contract claim could not survive because Johnson has yet to suffer any measurable damages, as evidenced by the fact that she is still residing in her home and foreclosure is not a foregone conclusion. Id.

Finally, HPF maintained that the breach of contract and anticipatory repudiation claims should be dismissed because Johnson had not plead any facts to show that a

contract was formed. In particular, HPF argued that Johnson failed to allege who entered into the contract, what its terms were, why it was created, how it was initiated, and the consideration required to support the formation of a contract. Def. Mem. at pp. 9-10.

In its motion to dismiss the Amended Complaint, HPF repeated its contention that Johnson made allegations of fact in the present case contrary to those in her suits against American Security and Ocwen. See Homeownership Preservation Foundation's Memorandum in Support of its Motion to Dismiss Plaintiff's Amended Complaint ("Def.'s Amend Mem.") [Docket No. 35] at pp. 7-8.

HPF then argued that assuming that the parties did enter into a contract, Johnson's breach of contract claim still fails as a matter of law because she has not suffered any damages that flowed from the alleged breach – Johnson was obligated to pay the mortgage before she contacted HPF and this obligation did not change after she contacted HPF, regardless of any assistance provided or not provided by it. Def.'s Amend Mem. at pp. 8-9. HPF also maintained that Johnson has not suffered any damages at this point and her allegations of damages were speculative, at best. Id. at p. 9 n. 5. Additionally, HPF asserted that Johnson could not establish reliance damages, as she owed $53,400.43 before she contacted HPF and continues to owe the same amount. Id. at p. 10.

At the hearing on the motion to dismiss the Amended Complaint, HPF stated that it was still relying on the arguments it had made in its initial motion to dismiss with regards to Johnson's breach of contract claim.

In response to HPF's arguments, Johnson did not address the substance of HPF's arguments with respect to its motion to dismiss her breach of contract claim. Instead, she made general assertions of having met the necessary pleading requirements and Rule 12(b)(6), including: the "facts alleged in Plaintiff's Amended Complaint support the essential elements of Plaintiff's claim"; "the standard on an FRCP 12(b)(6) is so stringent that a court will rarely encounter circumstances that justify granting such a motion against Plaintiff"; and the "Amended Complaint should not be dismissed, in that the rules permit the parties to change relevant issues by amending the pleadings." See Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Amended Complaint ("Pl.'s Mem.") [Docket No. 43] at pp. 1, 4, 5 (citations omitted).

Under Minnesota law,[4] a breach of contract claim contains the following elements: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp.2d 951, 961 (D. Minn. 2000) (citing Briggs Trans. Co. v. Ranzenberger, 217 N.W.2d 198, 200 (Minn. 1970)). The formation of a contract requires an offer, acceptance, and consideration. See Taxi Connection v. Dakota, Minnesota & Eastern R.R. Corp., 513 F.3d 823, 826 (8th Cir. 2008) (citing Commercial Assocs., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006)); see also Cederstrand v. Lutheran Bhd., 263 Minn. 520, 529-32, 117

---

4       The Civil Cover Sheet filed by Johnson indicates that the basis of jurisdiction is a federal question, and not diversity. See Docket No. 1-1. At the same time, Johnson indicated that she and HPF were citizens of different states. Id. As the breach of contract claim is a state claim, and neither party argued that any other state's law applies, this Court will apply Minnesota law to Johnson's breach of contract claims. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n. 3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

N.W.2d 213, 219-21 (1962). "Consideration is something of value exchanged for a performance or promise of performance." In re MJK Clearing, Inc., 408 F.3d 512, 515 (8th Cir. 2005) (citing E.J. Baehr v. Penn-O-Tex Oil Corp., 258 Minn. 533, 104 N.W.2d 661, 665 (1960)).

"Lack of consideration is a defect in the formation of a contract, where the contract itself does not require a party to provide consideration. Such a contract is void and its execution has no legal effect." Cameo Quality Homes of Woodbury, Inc. v. Thuringer, Civil No. 07-340 (JNE/JJG), 2007 WL 1425490 at *8 n. 5 (D. Minn. May 11, 2007); see also James v. Western National Mut. Ins. Co., No. Civ. 99-1566 (RHK/JMM), 2001 WL 436121 at *11 (D. Minn. March 09, 2001) (citing Deli v. Hasselmo, 542 N.W.2d 649, 656 (Minn. Ct. App. 1996)). Consideration must be the result of a bargain, which the Minnesota Supreme Court has defined as follows:

> "[B]argain" does not mean an exchange of things of equivalent, or any, value. It means a negotiation resulting in the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other. Consideration thus insures that the promise enforced as a contract is not accidental, casual, or gratuitous, but has been uttered intentionally as the result of some deliberation, manifested by reciprocal bargaining or negotiation.

Baehr v. Penn-O-Tex Oil Corp., 258 Minn. 533, 538-39, 104 N.W.2d 661, 665 (1960); see also Murray v. MINNCOR, 596 N.W.2d 702, 704 (Minn. Ct. App. 1999) ("The factor that distinguishes an unenforceable promise from an enforceable contract is consideration, or the 'voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other.'") (quoting Cederstrand v. Lutheran Brotherhood, 263 Minn. 520, 530, 117 N.W.2d 213, 220 (1962)).

As a starting point, this Court rejects any assertion by HPF that the Court should consider the litigious nature of Johnson or the fact that she has sued other parties regarding her mortgage and has alleged facts in those suits inconsistent with the facts alleged in the Amended Complaint. HPF is certainly free to use the facts alleged and claims made by Johnson in her other suits to attack her credibility or the truth of the claims she has made in this case. However, as this matter is before this Court on a motion to dismiss based on Rule 12(b)(6), the only issue before the Court is whether the Amended Complaint adequately states a claim for relief against HPF.

That said, construing all reasonable inferences from the facts plead in the Amended Complaint in a light most favorable to Johnson, the Court finds that she has not stated a viable breach of contract claim because she has failed to plead facts from which this Court could determine that it was plausible that a contract was formed and breached.[5]

Johnson alleged in her Amended Complaint that a contract was established on July 8, 2008, and that in July 2008, HPF informed her that it could assist her in avoiding foreclosure and finding the resources for refinancing or modifying her loan. Amended

---

[5] As to HPF's arguments on causation and damages, even if HPF were correct that any inaction by it was not the proximate cause of any foreclosure of Johnson's home, or that because her home has not yet been foreclosed, her allegations of damages are speculative, these arguments ignore the balance of the Amended Complaint. As stated above, in addition to claiming the specter of foreclosure, Johnson has sought monetary damages in the amount of $200,000 for emotional distress, physical pain and mental anguish, and the accelerated demand for payment of the entire amount of her loan by her mortgage company. The fact that Johnson may prove no damages at trial, is not a basis to grant HPF's motion to dismiss at this time. Further, this Court cannot conclude in the absence of any factual development, that Johnson's alleged damages are too speculative. See generally, Group Health Plan, Inc. v. Philip Morris, Inc., 68 F. Supp.2d 1064, 1071 (D. Minn. 1999) (refusing to dismiss a claim on a motion to dismiss based on the assertion that plaintiffs' alleged damages are too speculative given the lack of factual development).

Complaint, ¶¶ 3, 6. However, these facts do not suggest the formation of a contract as they do not set forth the terms of any offer made by HPF to Johnson, much less who made the offer or when and how it was communicated to her. Lacking such information, it is impossible for this Court to determine whether a contract was created, the contents of the contract or whether HPF breached any of the terms of the contract. See Motley v. Homecomings Financial, LLC, 557 F. Supp.2d 1005, 1012-13 (D. Minn. 2008) (dismissing plaintiff's breach of contract claim for failure to state a claim, in part, on the basis that "plaintiffs have not attached the allegedly violated contracts to the Complaint, nor have they pleaded the terms of those contracts, rendering it impossible to discern precisely how [the defendant] allegedly has breached them.").

In addition, nowhere in the Amended Complaint did Johnson plead that she accepted any alleged offer by HPF, and most critically, she did not allege any facts from which this Court could independently discern that she had accepted any alleged offer by HPF. It is true that the facts alleged in the Amended Complaint indicated that both HPF and Johnson had interactions with each other, given the documents provided by HPF to her and the documents and information she gave to HPF bearing on her financial situation (Amended Complaint, ¶¶ 6-7, Affidavit of Barbara Wendt dated May 11, 2009, ("Wendt Aff.") ¶¶ 3-5, Ex. A-C [Docket No. 14].[6] However, after Twombly, plaintiffs "must assert facts that affirmatively and plausibly suggest that the pleader has the right

---

[6]    As Johnson referenced her Client Action Plan, Budget Assessment Summary, and Client Budget in the Amended Complaint (Amended Complaint, ¶ 6), this Court can consider these documents in connection with this motion to dismiss. See Piper Jaffray Cos. v. National Union Fire Ins. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997) (finding court can consider materials that are "necessarily embraced by the pleadings."); see also Surgical Synergies, Inc. v. Genesee Associates, Inc., 432 F.3d 870, 873 n. 3 (8th Cir. 2005) (quoting Piper Jaffray) (citations omitted).

he claims..., rather than facts that are merely consistent with such a right.  See Gregory, 565 F.3d at 473 (quoting Stalley, 509 F.3d at 521).  While these facts are consistent with some type of relationship between Johnson and HPF, this Court will not infer facts that have not been provided in the Amended Complaint.  See Stone, 364 F.3d at 914-15 (affirming the District Court's dismissal of plaintiff's pro se complaint, the Eighth Circuit rejected any suggestion that the district court should infer allegations of fact from the complaint).

Similarly, Johnson's Amended Complaint fails to assert sufficient facts as to how HPF breached its alleged contract with her.  See Motley, 557 F. Supp.2d at 1013 ("Simply put, Plaintiffs were required to plead sufficient facts to demonstrate why and how [defendant] allegedly breached its contracts with Plaintiffs; it is not enough for them to simply recite the magic word 'breach' in order to avoid dismissal") (citing Twombly, 127 S.Ct. at 1974). The Supreme Court has made clear that "labels and conclusions", "formulaic" and "threadbare recitals of the elements of the cause of action will not do." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555).  Here, the Amended Complaint sets forth several misrepresentations allegedly made to Johnson by HPF between July 2008 and March 2009 regarding what HPF said they were going to do for her (see Amended Complaint, ¶¶ 8-10); yet, Johnson never set out facts to support her general assertions that HPF's "repeated misrepresentations of performance was a repeated breach of contract;" a "fundamental breach," and an "anticipatory breach." Amended Complaint, ¶¶ 11-13.  At best, all this Court can divine from these allegations is that HPF did not do what they had told her they were going to do.  But, again the Court cannot "assume facts that are not alleged."  See Stone, 364 F.3d at 915.

Most glaringly, the Amended Complaint makes no mention of any consideration to support the alleged contract between HPF and Johnson. This Court cannot "'conjure up unpled allegations' to save a complaint." See Gregory, 565 F.3d at 473 (quoting Rios, 444 F.3d at 421). Lacking any facts that make it plausible that something of value was exchanged between the parties, such as for example, money or "the voluntary assumption of an obligation by one party upon condition of an act or forbearance by the other" (Baehr, 104 N.W.2d at 665), the Court has no choice but to find that Johnson's breach of contract claim does not state a claim.

In sum, as currently pled, the Amended Complaint merely sets out "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). For all of these reasons, HPF's motion to dismiss Johnson's breach of contract claim should be granted and the claim should be dismissed without prejudice.

### 3.  Federal Records Act Claim

HPF argued that Johnson's Federal Records Act ("FRA") claim fails to state claim for relief, as the Act only applies to the actions of federal agencies and because the statute does not provide for a private remedy. See Def.'s Amend Mem. at pp. 11-12. This Court agrees.

The FRA is a collection of statues dealing with the duties of federal agencies in regards to records creation, management, and disposal duties. See Armstrong v. Executive Office of the President, Office of Admin., 1 F.3d 1274, 1278 (D.C. Cir. 1993) (citing 44 U.S.C. §§ 2101 et seq., 2901 et seq., 3101 et seq., 3301 et seq.). Congress's intent under the FRA includes the "[j]udicious preservation and disposal of records." Id.,

(quoting 44 U.S.C. § 2902(5)). "[T]he Federal Records Act establishes only one remedy for the improper removal of a 'record' from the agency. The head of the agency is required . . . to notify the Attorney General." <u>Kissinger v. Reporters Committee for Freedom of the Press</u>, 445 U.S. 136, 148 (1980). "Thus, individuals do not have a private right of action to sue under the Federal Records Act." <u>Laughlin v. C.I.R.</u>, 103 F. Supp.2d 1219, 1225 (S.D. Cal. 1999).

In her Amended Complaint, Johnson asserted that HPF was a "non-for-profit Organization with its principal place of business in the state of Minnesota" as opposed to a federal agency. <u>See</u> Amended Complaint, ¶ 2. This critical fact, coupled with the fact that individuals do not have a private right of action to sue under the FRA, leads this Court to find that HPF's motion to dismiss as to Johnson's FRA should be granted and that the claim be dismissed with prejudice.

### 4. Federal Privacy Act

HPF asserted that Johnson's Federal Privacy Act ("FPA") claim under 5 U.S.C. § 522a should be dismissed for failure to state a claim because it is not an agency of the federal government as defined by the Act. <u>See</u> Def.'s Amend Mem. at p. 12.

The FPA provides in relevant part:

> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . .

5 U.S.C.A. § 552a(b). Under the FPA an "agency" "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive

Office of the President), or any independent regulatory agency. . ." 5 U.S.C. § 552(f)(1).

As was the case with the FRA, Johnson's FRA fails because HPF is not a federal agency. See McCullough v. Bureau of Prisons, NO. 05CV374 (HHK), 2006 WL 667166 at *1 (D.D.C. March 15, 2006) ("Generally, the Privacy Act regulates the collection, maintenance, and disclosure of personal information by federal executive branch agencies. It does not cover a private corporation, which is not an "agency" for purposes of the Privacy Act.") (citation omitted); see also Dittman v. California, 191 F.3d 1020, 1026 (9th Cir. 1999) ("The civil remedy provisions of the statute do not apply against private individuals, state agencies, private entities, or state and local officials.'") (quoting Unt v. Aerospace Corp., 765 F.2d 1440, 1447 (9th Cir. 1985) (concluding that a not-for-profit corporation cannot be held liable under the Federal Privacy Act)); Patterson v. Austin Medical Center, NO. CIV 97-124, 1998 WL 35276064 at *2 (D. Minn. Jan. 28, 1998) (finding no civil cause of action under the Act against private corporations and noting that even if a corporation conducted business with the government and received funding from the government, that alone was not enough to give an aggrieved party a cause of action under the Federal Privacy Act) (citation omitted)).

Despite the fact that Johnson alleged that HPF represented that it was a HUD approved federal agency (Amended Complaint, ¶ 5), Johnson's allegation that HPF is a "non-for-profit Organization with its principal place of business in the state of Minnesota," (id., ¶ 2), conclusively establishes that it cannot be liable under the FPA, as its is a private entity and not a federal agency. As such, HPF's motion to dismiss as to Johnson's FPA should be granted and the claim be dismissed with prejudice.

### B.     Plaintiff's Motion for Reasonable Modifications

On June 8, 2009, Johnson filed a "Motion for Reasonable Modifications" [Docket No. 22], which included a request for teleconference hearings and facsimile filings. Johnson also requested that this Court to allow her and her family members the opportunity to enter testimony, and to ensure that they are not excluded from these proceedings due to their physical disabilities. The Court sent a letter to Johnson on June 10, 2009 [Docket No. 25], stating she could appear before the Court on HPF's motion to dismiss by telephone. Consequently, Johnson appeared by telephone for the hearings on both HPF's motions to dismiss. As for her request for "facsimile filings," the Court asked for a clarification, as she had been mailing her court filings to the Clerk of Court, which is consistent with the Federal Rules of Civil Procedure and the Local Rules governing actions in this District. In addition, the Court asked for clarification regarding her request to allow her and her family members the opportunity to enter testimony, and to ensure that they are not excluded from these proceedings due to their physical disabilities. Johnson has not responded to the Court's request for clarification.

Given that Johnson has exhibited the ability to file documents by the mail, the Court does not find it necessary to give her permission to file by facsimile. As for her request to allow her and her family members the opportunity to enter testimony, as Johnson did not respond to the Court's request for clarification, the request is denied for a lack of information. In any event, Johnson and her family members are always free to attend court proceedings; and if live testimony is being taken at a proceeding, Johnson will always be given an opportunity to call witnesses on her behalf.

## RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Homeownership Preservation Foundation's Motions to Dismiss [Docket Nos. 10, 33] be **GRANTED** as follows:

      a.      Defendant's Motions to Dismiss Plaintiff's breach of contract claim be **GRANTED** and that the claims be **DISMISSED WITHOUT PREJUDICE;**

      b.      Defendant's Motions to Dismiss Plaintiff's Federal Records Act and Federal Privacy Act be **GRANTED** and that the claims be **DISMISSED WITH PREJUDICE**; and

      c.      That plaintiff's Real Estate Settlement Procedure Act ("RESPA"), 12 U.S.C. §§ 1206, <u>et</u> <u>seq</u>. claim and claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, <u>et</u> <u>seq</u>. be **DISMISSED WITHOUT PREJUDICE** based on plaintiff's representation that she is no longer pursuing these claims.

2.      Plaintiff's Motion for Reasonable Modifications [Docket No. 22] be **DENIED** as moot;

3.      Plaintiff's Motion for a Hearing [Docket Nos. 39, 42] be **DENIED** as moot since plaintiff made an appearance at both hearings on Homeownership Preservation Foundation's Motions to Dismiss.

Dated:      December 17, 2009

                           s/ *Janie S. Mayeron*
                           JANIE S. MAYERON
                           United States Magistrate Judge

**<u>NOTICE</u>**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 31, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 31, 2009**.